for the appellate Mr. Wilson and for the athlete Mr. Langecker. Pronounce that correctly. You may proceed. Thank you. Court, please. Counsel. I'm Paul Wilson. I represent the plaintiff, Petitioner Ann Palant, Joshua McCormick. We present to the court an issue arising out of a parent ejection in Champaign County. And when it all started, everyone was cooperating and they presented to Judge Blockman in Champaign County, which is the residence of the appellant, a joint parenting agreement in January of 2010, or entered into in January of 2010. And then they presented in open court a stipulation and an agreement. That agreement acknowledged a number of things. Mr. McCormick was on the threshold of entering into active duty with the United States Marine Corps, and in fact he went and served a tour in Okinawa, Japan, and then two combat tours in Afghanistan. Based upon that upcoming turn of events for him, the parties agreed that the mother was going to be the primary residential parent, but they entered into a joint parenting agreement, joint custody, with a number of provisions about when the child would visit and the like. The mother at all times was a resident of the state of Missouri. In the marital settlement agreement, the joint parenting agreement, it wasn't a marital settlement agreement, I apologize, it was a joint parenting agreement, there was an acknowledgment that in fact she resided in the state of Missouri, but the parties agreed that Illinois would have jurisdiction and the parties would be submitting any further agreements, modifications, and the like to the state of Illinois. She appeared in open court, she acknowledged that to Judge Blockman, and at that point the usual questions that we run into in private practice with respect to joint custody, are you cooperating, are you getting along, is everything fine, and they both acknowledged yes. Now interestingly enough, this joint parenting agreement was entered into on the 19th of January 2010. They didn't go to court in front of Judge Blockman until February 8th of 2010. So there was about a six week, five week hiatus there, where if anybody had pulled feet before they showed up in front of Judge Blockman, they could have objected. There have never been any objections by anyone to the joint parenting agreement, the order that Judge Blockman entered, until the mother, contrary to the agreement and the order of Judge Blockman, decided to leave the state of Missouri. Alright, and then you're maybe going into the equitable side of things, but really when we're looking at jurisdiction, we're talking about personal jurisdiction and subject matter jurisdiction. You're indicating that she submitted herself to the jurisdiction of the Illinois court via the agreement, and so personal jurisdiction is established. It's subject matter jurisdiction that the trial court found lacking here and entered an order avoiding the original agreement, correct? That is correct, except it was a different judge. I understand that. So really the crux then is subject matter jurisdiction, and she is indicating, Alexis is indicating, that the UCCJEA specifically provides for subject matter jurisdiction under four separate circumstances, none of which apply to this case. Is that right? Essentially she was saying Nevada, where she removed without permission of the court, as required by the court order, she removed herself to the state of Nevada. I understand, but your task here is to convince us that Illinois had subject matter jurisdiction in 2010. Yes, Your Honor. The opponent is saying UCCJEA, under the four criteria, four different circumstances, did not allow for jurisdiction in Illinois. So let me maybe prime the pump here. Did the Illinois Constitution provide for subject matter jurisdiction in this case by indicating that circuit courts have original jurisdiction over all justiciable matters? Absolutely, it trumps the UCCJEA. Ancillary question, and that is, is Nevada the appropriate state? Is that the home state? Or should the home state have been determined at the time the judgment was entered? In other words, was it Missouri in Illinois? But it's not important to this case, because the issue being appealed, or the order being appealed, is the trial court's order here finding the 2010 order void. So it's that dismissal that's being appealed, and that finding of voidness. So what happened, and whether or not Nevada is an appropriate forum is irrelevant. So was the order void for lack of subject matter jurisdiction? I think that is the key here. I would concur completely, and I don't think there's any question. So what is the case authority that tells us that your position is the correct position? Well, we start with the Constitution of Illinois of 1970, and there are rumblings about it, but as you've obviously correctly indicated, Your Honor, that Constitution imbued the circuit court with original jurisdiction of all justiciable matters. Okay, what's a justiciable matter? And I think that's pretty clear from the case law I've cited to the court, and that is that a justiciable matter is whatever the legislature says it is. In other words, if they enact a statute saying, okay, circuit court, you hear this kind of case, well, they did it here because they've got the parentage, and that's how this all arose. So it's a justiciable matter. Now, there's a lot of case law out there that's floating around, and this court, and I think it was 1999 this court had cited Alexander. That was important because it said the UCCJEA is not jurisdictional. It is a limitation on the exercise of jurisdiction, and unfortunately, our Supreme Court, when it decided, I think it was a seminal case, and that is Bilbo Toyota, it actually discussed the fact that there were a number of appellate court decisions that says the UCCJEA is a limitation on the jurisdiction. The Supreme Court, in that particular case, considered the fact that there was this kind of limitation floating around in some of the appellate decisions, and they said they're not going to buy it, that that's an attempt by the legislature to impose a condition precedent upon the exercise of jurisdiction, and it can't do that. They said the Constitution imbued the circuit courts with jurisdiction, and you can't tell the courts what their limitations are. So I think that to the extent that our district of the appellate court talked about these conditions precedent being imposed, our Supreme Court says no. And that goes all the way back to Bilbo Toyota, a 2002 decision cited numerous times in my brief. It also said that statutory conditions are waivable, and so even if Judge Blockman didn't pay any attention to the UCCJEA, the fact that the parties participated openly with that, never objected to jurisdiction until four and a half years later or so, I believe there's a waiver. And even then, according to our Supreme Court, you cannot limit the jurisdiction of the circuit court to enter orders. And Steinbrecher, again, the decision cited in our brief, takes that a little step further and says, well, once you've got the jurisdiction, you can do anything you want. In other words, you don't have to follow these restrictions, and you can do it. So jurisdiction connotes the ability to make a decision whether it's right or it's wrong. We've cited other cases in here, and I won't get into them, but basically that 735 ILCS 5-2-1301 says you can object to a judgment within 30 days, or even 214-01 where we get into the fraud concept, that also applies. None of these things were done for four and a half years, and what did we do in the interim? Well, what we did was we accepted benefits. Now there's a dispute as to how many benefits this lady accepted on behalf of the minor quarter in terms of child support, the provision of medical insurance for the child, and the like. Nonetheless, some benefits of Judge Blockman's original order were accepted. That gets us into the plethora of cases I've cited to you with respect to an estoppel, a ratification, a waiver, and the like. So basically, and factually, we never got to presentation of evidence. So if we get to the point where this court, and I think realistically, even if the court says Judge Blockman didn't have authority to enter the orders he entered, I think we still are looking at a remand to see if the UCCJEA applies, because we've got the improper removal, we've got ratification, estoppel, and waiver. Now, the question that comes to mind in being quite candid with the court, if we don't have jurisdiction here, how can we decide those issues? I don't have a good answer. But the bottom line is we may not have jurisdiction, but it certainly blows the UCCJEA out of the water. And I don't think that that imposes a restriction. And that sort of leaves us in a no-man's land. But then again, as the court's indicated, we're not talking about anything beyond the jurisdictional issue. I've cited the McCarthy decision. Once again, it talks about 213.01, 214.01 being applicable. And it talks a bit about the issue of subject matter jurisdiction, which doesn't specify, okay, circuit court, you can do this and only this. What it does is it says you have jurisdiction over a general class of litigation. In this case, parentage. And the legislature did that. And I suspect that really what we're talking about, if we try the legislature imposing conditions precedent, which the Supreme Court says that's a no, aren't we really talking about an invasion of the separation of powers of state government? Because aren't we talking about the Constitution has vested with the justiciable matter issue to the circuit court. Now can the legislature say, okay, circuit court, here's how you exercise your authority. And I think the case law is clear that that's simply not the case. We've cited the McCarthy case on that. And what's really telling about this particular case is some interesting commentary in the village of Ringwood, a decision that said, you know, there are no cases that have been cited by, in that case, the proponent that there was no subject matter jurisdiction. And the reason they haven't cited any cases is because there aren't any. That what we learned from Bellville-Toyota is the law is binding on everyone. It's binding on everybody here. And all the authorities proffered by the appellee, this lady in this case, are cases, in many cases, older than I am. And certainly, all of these cases predate the decision in Bellville-Toyota. What about the enactment of the UCC-JEA? Did it predate or postdate Bellville-Toyota? Which UCC? Well, JEA, I think it was after Bellville-Toyota. So the legislature, in the face of Bellville-Toyota, sought to restrict jurisdiction? I don't think they did. And the cases cited in my brief basically talk about, and even some of the cases cited by the appellee herein, those cases acknowledge that, well, jurisdiction as used in the UCC-JEA ain't really jurisdiction. It's, if you will, guidance. And I think that if within 30 days of Judge Blatham's order having been entered, if this young lady had then said, well, motion to reconsider, Your Honor, because I don't think what you've done complies with the UCC-JEA. She didn't do that. She lost that issue. Unless she could establish some fraud under 214.01. Simply not the case. She, if you will, enjoyed all the benefits, and now wants to complain about the benefits she got under a judgment that she agreed to. She could argue if subject matter jurisdiction was lacking, then it was a void order, and a void order can be attacked at any time. That assumes that our Constitution of 1970 is void. Because that imbued subject matter jurisdiction, period. Just like Village of Ringwood said to us, that is, you're not citing any cases saying that the Constitution's invalid. Because that's what Bill Hill-Toyota talked about. That's what McCarthy talked about. So, counsel, if we were to find that the trial court did have subject matter jurisdiction and we remanded it to the trial court, can the trial court still decide the issue of where the case should be heard? I mean, could the trial court decide to transfer it to Clark County, Nevada? Your Honor, I believe they can. I think that, quite honestly, I would expect them to do that. And I think that's the appropriate path to follow, and not the path that Judge McPheeters decided to follow, where if he even considered our argument about the Constitution of 1970, it sure didn't enter into his verbal comments. He had the, and this is in the transcript, obviously, but he let the Nevada judge basically say, well, the UCCJEA in Nevada says this, that, and the other, and so we're the home state, go away, Illinois. And Judge McPheeters said, I agree 100% with what you're saying. Didn't even think about our Constitution. And I did argue about our Constitution in that conference between the two judges, or among the two judges, and counsel and myself, about the Constitution. I guess we can't really expect a Nevada judge to be cognizant of our Illinois Constitution, but Judge McPheeters could and should. So if the case does get heard by McPheeters or whoever again, and he decides to transfer it to Clark County, Nevada, you or somebody on behalf of your client could argue in Nevada that the case should be heard in Illinois, or what? But he could argue that she shouldn't have left the state of Missouri and all that in Nevada. Can he make that argument? I think, probably wouldn't have much luck in Nevada. But no, I think you argue that here in Illinois about the removal, and Judge Blockman specifically commented that he would consider the issue of improper removal in terms of temporary custody. But I think we've got the other issues that come into it, estoppel, waiver, ratification, that I've cited in the brief. Right, but I thought you told me earlier that the Champaign County Court, if it hears the case, could decide to transfer it to Clark County. You can answer my question, I think. Yeah. I think that's within the circuit court's authority in Illinois to say that it's an inconvenient form, if you will, for Illinois, and consequently it should be there, could be transferred, and so there's certainly a possibility there. Okay, thank you. We'll have additional time on rebuttal. Thank you. If I may please the court, opposing counsel, I'm Ron Laniker. I represent the respondent affilee, Alexis Robertson, in this matter. I want to just briefly speak to some of the matters that Mr. Wilson had spoken to at the outset about this case, as it deals with subject matter jurisdiction. To begin with, there is no contention here that's been made by either the petitioner at any point that minor child, London McCormick, ever resided within the state of Illinois, or had significant contacts within the state of Illinois, or had any kind of other situations or any other kind of exceptions under the UCJEA, which would allow her to have that jurisdiction in Illinois. Are you talking personal jurisdiction over the child now, as opposed to subject matter jurisdiction? I'm talking subject matter jurisdiction. The court had personal jurisdiction to enter into the paternity action. All right. So if you're talking about subject matter jurisdiction, you're talking about jurisdiction over a matter, and that would be the custody issue here, correct? That's correct. All right. That would deal with the issue here of the joint parenting agreement and all the things that flowed therein. It's uncontested that the child lived in Missouri at the time the judgment was entered in 2010. The petitioner argues that in 2012, Mom had left Missouri and gone to Nevada. That was something that the evidence shows that Mom had obviously notified the petitioner about that at the time. However, under the UCCJEA of both jurisdictions, the child's home state was Nevada at the time the court ruled that the judgment was void. To that extent, Illinois is not a state which, again, there are contexts where it would be considered a child's home state, where significant context would actually be considered, or where there could be it. There has been no other exception as far as emergency jurisdiction, as far as any other exception which would be applicable under the UCCJEA. You seem to take the position that the UCCJEA trumps Illinois Constitution provisions dealing with jurisdiction. Your opponent says that the 1970 Constitution vests the circuit courts with broad jurisdiction. All justiciable matters are subject to jurisdiction within the circuit courts. Custody matters have been historically resolved absent any statutory grant of power to the courts, so why wouldn't the Constitution trump the UCCJEA? Because a justiciable matter is a controversy which is appropriate for review by the court, which is definite and concrete, as opposed to something hypothetical and moot. And the cases that the petitioner has spoken about in Poynter talk about where that subject matter jurisdiction was initially agreed to by the parties. And then for another reason, somebody contested that after a period of time and stated that the subject was void. So the question here about it being an actual matter that subject matter jurisdiction trumps, our contention is that while Belleville does make a change here as far as what those matters actually are, it doesn't necessarily trump the UCCJEA in this case, which specifically states that subject matter jurisdiction over a minor child is determined by where the child's home state is. And that statute was enacted mainly for circumstances such as these, where you're trying to determine, well, if there was a wake, where is the child at this moment? Because people are moving around quite often. At the end of the day, you're looking at the best interest of the child. I don't believe that the Constitution is going to necessarily trump the UCCJEA in this matter. Subject matter jurisdiction is the right to hear a class of cases, and that's something that things can be added. And I think that Mr. Wilson has mentioned this, that the legislature has given courts the right to hear paternity actions. And I believe that this is something that isn't going to be covered by Belleville, which talks about irregularities and collateral attacks. Many of the cases that I've looked at and I've cited here talk about another basis for trying to waive subject matter jurisdiction, after it had already been established by the court. The cases that the petitioner quotes here, as far as Alexander, for example, speak about a matter where there was subject matter jurisdiction at one time, and then at some point later on, as in the case, say, with Poynter, they feel that there was some fraud which happened at a point of time years earlier, and now are using it as a collateral attack to try to say, okay, we didn't have subject matter jurisdiction. The other cases talk about where there's not an affidavit for irreconcilable differences. And that's an issue that, because of that, people have argued there's no subject matter jurisdiction. This goes to something more fundamental. And this goes towards, can the court have subject matter jurisdiction over a party when that party has not had contacts within the state as per the UCCJEA Act? One thing that counsel noted, and he mentioned that there are no cases that the respondent cited after Belleville, I would submit that there is one, in remarriage of DS-363, Illinois Appellate 3D-1091, which was decided in 2006. In that case, the court actually does quote Belleville-Toyota as far as the actual jurisdictional issue. And then it makes a determination as far as where the actual jurisdiction should lie. And they actually go through the process with the UCCJEA in that case to determine which state has the significant contacts. That's a case where the court determined, well, if there isn't, if there's a child doesn't actually, if Illinois isn't the home state, is there significant contacts? However, you still have an issue here where Belleville-Toyota is being talked about as far as whether the court has jurisdiction to hear this matter, and then the court goes into the application for the UCCJEA. And again, this is a statute that's been brought up specifically for cases where the child's home state and the child's contacts are now somewhere else. In our matter, we had an actual jurisdictional conference pursuant to the UCCJEA where the Nevada court and the Champaign court actually met by conference phone to discuss these matters to make that determination. And both judges at that time determined that pursuant to Illinois' jurisdictional act and Nevada's jurisdictional act, Nevada had the jurisdiction. And that was based upon the child's home state being in Nevada after a period of six months. And again, what's different about this case is there's no real basis here for jurisdiction in Illinois for a minor child. I do want to touch, too, on a couple of other matters that the petitioner brought up. He mentions that the judgment would, that they don't have, they can't bring the matter at this point because, you know, the period of time has elapsed. As I'm sure the court is aware, you can attack a judgment on the basis of subject matter jurisdiction as being void at any time. And I believe what the court was trying to get to with the issue of Belleville was that we don't want people to be coming back after the fact under the old reading of the Constitution and making collateral attacks based upon irregularities. That's entirely different from what we're talking about here. I don't think that Belleville stands for the premise that the Constitution is going to trump the jurisdiction in this matter, which I think has a completely conflicting cause of action as far as whether the UCCJEA would even apply here. But a contrary reading of that would mean that a court could actually, people could waive the rights at any time, irregardless of where the child is, irregardless of where the subject matter jurisdiction lies. And that would be a deviation from the way other states may or may not be interpreting their own acts. Mr. Langecker, before you get too far, you cited a case to us just recently. Was that included in your brief? It is not. Okay, could you give me that site again? Absolutely. That is 363 Illinois Appellate 3D, 1091. And what's the name of it? It is In Remarriage of Diaz, D-I-A-Z. Okay. Then we get to the issue here of is this something that parties can waive? And again, I think that the case law is fairly clear on this, is that subject matter jurisdiction is not something that can be waived by the parties in any event. And again, that goes back to the issue of did the court have the jurisdiction at this time to actually hear this matter? So to that extent, in looking at the cases, too, that respondent has cited, whether it's Lange, for example, those are cases where the court, there was jurisdiction at one point before the court, and then there was some contestation after the fact. That's, again, different from this case here where the court had already made a determination on jurisdiction between the parties. To that end, I believe that the court was correct in making its conclusion. I believe the court, this is not a matter that's really a close case under the UCCGEA, where there's a question as far as whether the child may have minimum context in one state or the other, or whether Illinois has sufficient context to be under the home state, or whether there's an emergency basis for a jurisdiction. There isn't any here. And under the circumstances, under our reading of the statute and how it has been interpreted, notwithstanding the constitutional arguments, is Illinois does not have subject matter jurisdiction in this matter to hear the child custody case. Therefore, our contention is that the judgment would be void. Even if, for the sake of argument, the judgment was not void, the court could make a decision here to actually change the jurisdiction as Mr. Wilson said, go to an issue here where there's a form of non-convenience, go to an issue, go to a circumstance where, okay, now the jurisdiction was proper in Illinois, now it's proper in another state, based upon that reading. So you're saying Joshua could win the battle but lose the war, winning the battle being winning the appeal, yet going back to the circuit court and the circuit court then transferring to Nevada via UCCJEA? I believe that's very possible. Now, the court never reached that issue because it found that the order in 2010 was void. But even that being the case, I believe that Your Honor is correct that were the case to be remanded, we would be in a situation where we're in again right here, where the court once again has to be dealing with the interest of the child, where the child's living, and where those contacts lie. And those contacts are in the state of Nevada and have been in the state of Nevada for the past 15 or 16 months. Just one final thing here. Mr. Wilson talked about when the judgment was entered in 2010. It's something to consider. My client was pro se at the time. She was 19 years old. She was not represented by an attorney. That is a consideration here as they reserve the issue of child support. And from 2010 until 2012, I believe that Mr. McCormick provided minimal child support, if any, to Ms. Robinson for that entire period. Wouldn't he have gotten an allowance from the military for a dependent? I believe that he would. Did he not apply for that? I honestly don't know. But in looking at it and looking at my client's affidavit, I believe that he had paid just a few hundred dollars for that, if any. And again, it's not something that changes the main arguments here of jurisdiction, but I think it's a factor that the court should be looking at as far as the balance between the two parties. So in any event, I'm willing to open it for questions. It seems to me if you're on the subject matter jurisdiction argument, our courts here in Illinois would have the right to determine whether the UCCJEA applies to this case to allow them to assert themselves into the case at this point. So isn't that what we're... If you say subject matter jurisdiction, isn't that what we're talking about? I believe so. However, the court has decided in that instance to determine that the UCCJEA would apply. Okay. All right. Thank you. Rebuttal? Thank you, Your Honors. Counsel? Look at Lange, L-A-N-G-E, cited in our brief. Exactly. Mom lived in the state of Indiana. Dad lived in the state of Illinois. Mom came to Illinois only for the purpose of establishing basically child support and agreement between the parties where the child will live, et cetera. Everything goes on happily for years. Mom moves back to Indiana. Mom then petitions the Illinois court for authority to remove the child to the state of Texas. She objects to the subject matter jurisdiction of the Illinois court to enter any orders restricting her movement of the child from Indiana to Texas. Exactly the case we have here. How is it the same case? Because here what you're... The issue is which trumps the other. The UCCJDA's provision of subject matter jurisdiction or the Illinois Constitution's provision of subject matter jurisdiction. And in Lange, that's not what you're dealing with. Well, the court in Lange specifically addressed subject matter jurisdiction and found that Illinois had subject matter jurisdiction. Even though Mom was just... It was a drive-by shooting for her to come to Illinois and submit herself to the jurisdiction of the Illinois court. But did it talk about UCCJDA's provision of subject matter jurisdiction and whether or not it fit any of the four criteria for subject matter jurisdiction? Because that's this case. I don't believe it did, but you never get to the subject matter jurisdiction of the UCCJDA because the cases cited to the court clearly establish that that's procedural. That's not substantive. That's not... I mean, subject matter jurisdiction is conferred by the Illinois Constitution. That's the end of that analysis. We got jurisdiction in Illinois. Subject matter and personal by her submission. So I think Lange is exactly on point. And the cases are pretty clear that the UCCJDA and any statutory provisions are simply procedural in nature. Procedural in nature. Once again, we come back to Steinbrecher saying that the court can decide right or wrong because it's got jurisdiction. It's got authority. And throwing out these red herrings about the significant connection is in Nevada or how much child support, how much visitation. It's got nothing to do with anything. There have been no factual presentations to the court with respect to that. So I think they're red herrings. I think I was astonished at the representation about Diaz has something to do with this case. Are you familiar with that case? Absolutely not. It wasn't cited in the brief. And I think there's a procedure you follow to a motion to supplement the brief. That wasn't done here. I think it's inappropriate to even consider this. We look at Steinbrecher. He talks about void and voidable. Void means you never had jurisdiction. The Constitution says we've got jurisdiction. Voidable means if you didn't follow the statutory guidelines, you shouldn't have brought it up to the court's attention within 30 days or if there was some fraud as some suggestion was made. 19 years old. Golly, my client was 20 years old. But that's nothing. Even if you're 19, I think you can do a lot of things as an adult when you're 18 or 19, as the case was. So I think that the bottom line is any complaints about the UCCJEA are waivable. It's procedural in nature. And I think the case law is without question in support of this gentleman's position and that this court should reverse and remand and let the chips fall where they may in Champaign County. And we can argue about the applicability and propriety of the UCCJEA when we have a wrongful removal and a deprivation, as we cited in our brief, of parental rights. So as is usually the case in family law, everybody gets dirty. Nothing is nice things. Thank you. Thank you. We'll take this matter under advisement. It's being in recess until the writing of the next case.